```
 1  Victor L. George, State Bar No. 110504
    Wayne C. Smith, State Bar No. 112535
 2  LAW OFFICES OF VICTOR L. GEORGE
    20355 Hawthorne Blvd., First Floor
 3  Torrance, CA 90503
    Tel:  (310) 698-0990
 4  Fax: (310) 698-0995
    E-mail:  vgeorge@vgeorgelaw.com
 5           wsmith@vgeorgelaw.com

 6  William F. Sondericker, Esq.
    CARTER LEDYARD & MILBURN, LLP
 7  2 Wall Street
    New York, NY 10005-2072
 8  Tel:  (212) 732-3200
    Fax: (212) 732-3232
 9  E-mail:  sondericker@clm.com

10  Attorneys for Defendants
    KANEKA CORPORATION and
11  KANEKA NORTH AMERICA LLC
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADLI LAW GROUP, a California Corporation,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>KANEKA CORPORATION, a Japanese Corporation; and KANEKA NORTH AMERICA LLC, a Texas Limited Liability Company,<br><br>　　　　　Defendants.<br>_____<br>KANEKA CORPORATION, a Japanese Corporation,<br><br>　　　　　Counter-Claimant,<br>　　v.<br><br>ADLI LAW GROUP, a California Corporation; DARIUSH G. ADLI, an individual; NICOLETTE HACHEM-SAWAYA, an individual,<br><br>　　　　　Counter-Defendants. | CASE NO. CV12-07377 GW (RZx)<br><br>[Assigned to Hon. George H. Wu, Courtroom 10]<br><br>**DECLARATION OF WAYNE C. SMITH IN SUPPORT OF KANEKA CORPORATION AND KANEKA NORTH AMERICA LLC'S OPPOSITION TO HC2'S MOTION TO INTERVENE**<br><br>[Filed concurrently with: Opposition to HC2's Motion to Intervene]<br><br>Date:　March 7, 2013<br>Time:　8:30 a.m.<br>Crtrm: 10<br><br><br><br>Complaint Filed:　　August 28, 2012<br>Counter-Claim Filed:　November 2, 2012<br>Trial Date:　　　　None Set. |

DECLARATION OF WAYNE C. SMITH IN OPPOSITION TO HC2'S MOTION TO INTERVENE

| | |
|---|---|
| 1 | HC2, INC., a Washington, DC Corporation, |
| 2 | |
| 3 | Plaintiff-Intervenor, |
| 4 | v. |
| 5 | ADLI LAW GROUP, a California Corporation, KANEKA CORPORATION, a Japanese Corporation and KANEKA NORTH AMERICA, LLC, a Texas Limited Liability Company, |
| 6 | |
| 7 | |
| 8 | Defendants-Intervenor |

i

DECLARATION OF WAYNE C. SMITH IN OPPOSITION TO HC2'S MOTION TO INTERVENE

I, Wayne C. Smith, declare:

I am an attorney at law, duly licensed to practice law in all of the Courts of the State of California. I am a partner in the Law Offices of Victor L. George, attorneys for KANEKA CORPORATION and KANEKA NORTH AMERICA LLC. I have personal knowledge of the matters stated herein. If called as a witness, I could and would testify truthfully and competently thereto under oath.

1.  Attached hereto as **Exhibit 1** is a true and correct copy of the Master Services Agreement entered into between HC2, Inc. and Adli Law Group, P.C.  This document was attached as *Exhibit 2* to HC2, Inc.'s Motion to Intervene.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on February 14, 2013, at Torrance, California.

/s/

WAYNE C. SMITH, Declarant

# EXHIBIT 1



## MASTER SERVICES AGREEMENT

THIS MASTER SERVICES AGREEMENT ("Agreement") is made effective as of 10/14/11 (the "Effective Date"), by and between HC2, Inc., commonly known as Hire Counsel, a Washington, DC corporation, having its principal place of business at 575 Madison Ave. Suite 3000 New York, NY 10022 ("HC"), and ADLI LAW GROUP P.C., a California corporation, having its principal place of business at 633 West 5th Street, Suite 6900 Los Angeles, CA 90071 ("Client"). HC and Client are sometimes individually referred to in this Agreement as a "party" and collectively referred to in this Agreement as "parties".

HC is in the business of providing attorneys, paralegals, and other legal professionals ("Contract Professional(s)") as well as associated workspace, IT infrastructure, project management, and related services (collectively, the "Services") to satisfy the short-term and long-term staffing needs of its third party clients;

Client desires to engage HC to provide Services;

NOW, THEREFORE, in consideration of the mutual promises and obligations hereinafter set forth, the parties agree as follows:

1. **SERVICES.**

   1.1. Subject to the terms and conditions of this Agreement, during the term of this Agreement, HC shall provide to Client the Services as specifically described in the Service Order. From time to time, the parties may add new Service Orders, which, upon execution by both parties, will be subject to the terms and conditions of this Agreement.

   1.2. This Agreement and each Service Order executed in connection with this Agreement, and any schedules or other documents expressly incorporated herein or therein, represent the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between the parties. In the event of any conflict between the terms and conditions of this Agreement and any Service Order, the terms of the Service Order shall prevail.

   1.3. HC is not engaged in the practice of law and has not been retained to provide legal advice or services. HC will not and cannot render legal advice or otherwise act as a law firm. Any services which constitute the practice of law are performed only by the legal practitioners licensed and authorized to practice law in the jurisdictions where such licenses are required and only under the supervision and control of duly authorized or licensed legal employees under Client's direction or control. HC will assist Client with conflicts checks by questioning HC Contract Professionals on a list of conflicts that are provided by Client and/or by facilitating Client forms that relate to conflicts, background checks and/or temporary employment. Client will complete any further steps necessary to clear HC Contract Professionals for conflicts related to matters they work on. Client shall not request or allow any HC Contract Professional to sign or certify any paper, statement or return, pertaining to underwriting, tax, SEC or other related matters.

   1.4. Any facilities, workspaces, computer systems, or other equipment provided by HC to Client shall be utilized by Client solely in conjunction with the Services and not for any other purpose. Client shall be responsible for specifying any security requirements relating to such facilities, workspaces, computer systems, and other equipment utilized for the Services.

2. **FEES; PAYMENTS.**

   2.1. Unless otherwise specifically stated in a Service Order executed by both parties, invoices shall be rendered on a weekly basis. Payment shall be due immediately upon receipt of invoice by direct payment to HC's address set forth above.

   2.2. Any fees that are not paid within thirty (30) days of their due date shall accrue interest at

**EXHIBIT 1**



the lesser of 1.5% per month or the maximum rate permitted by law. In addition, Client shall be liable for HC's reasonable costs of collection that may arise from Client's failure to payment amounts due hereunder.

2.3. Any billing disputes must be delivered in writing to HC at the address set forth above within thirty (30) days of the invoice date on which the disputed charges appears. If Client does not notify HC within thirty (30) days of the invoice date of a disputed charge, then the invoice shall be deemed accepted, final and binding.

2.4. HC shall be responsible for all federal, state, and local income taxes, FICA and FUTA taxes, state unemployment taxes and worker's compensation.

2.5. If any federal, state or local governmental entity with taxing authority over the Services provided under this Agreement imposes a tax directly on the Services provided by HC to Client under this Agreement, then HC may pass the direct amount of such cost on to Client, and Client shall promptly pay such cost.

3. **RIGHT TO INTERVIEW AND REMOVE CONTRACT PROFESSIONALS.**

3.1. Client shall have the right to interview and accept or reject, in its sole discretion, any HC Contract Professional. If Client agrees to retain such Contract Professional, HC shall deliver written confirmation setting forth terms of such Contract Professional's engagement.

3.2. Client has the right to request the removal of any HC Contract Professional at any time with or without cause, except as prohibited by law.

3.3. Upon notification to HC by Client that any Contract Professionals is no longer required by Client for any reason whatsoever, HC shall notify Contract Professional in accordance with HC's standard practices.

4. **ACCOUNTING FOR CONTRACT PROFESSIONALS' HOURS.**

4.1. HC shall directly pay, on a weekly or bi-weekly basis, any Contract Professional engaged by Client. As applicable, HC will provide time sheets to Client setting forth the number of hours worked by such Contract Professional, which an authorized representative of Client shall promptly verify, sign and return to HC.

4.2. Approved time sheets authorize full payment of Contract Professionals' hours for which HC will be paid by Client according to the Service Order and Section 2 of the Agreement.

5. **CONFIDENTIALITY.**

5.1. Confidential Information shall mean any and all business information disclosed in any manner or form, including but not limited to, marketing plans, business strategies, methodology, trade secrets, relationships with third parties, client lists, information regarding clients ("**Confidential Information**").

5.2. Confidential Information does not include information that: (i) is or becomes generally known to the public through no fault or breach of the Agreement by the receiving party; (ii) is known to the receiving party at the time of disclosure without an obligation of confidentiality; (iii) is independently developed by the receiving party without use of the disclosing party's Confidential Information; (iv) the receiving party rightfully obtains from a third party without restriction on use or disclosure; or (v) is disclosed with the prior written approval of the disclosing party.

5.3. Neither party shall use the other party's Confidential Information except for internal purposes related to the performance of the Agreement, and neither party shall disclose such Confidential Information to any third party except as is reasonably required in connection with the exercise of its rights and obligations under the Agreement (and only subject to binding use and disclosure restrictions at least as protective as those set forth herein executed in writing by such employees and consultants).

5.4. Upon written request, HC shall cause each Contract Professional assigned to provide

2



Services to Client to enter into a confidentiality agreement that contains confidentiality obligations that are the same or substantially similar as those set forth in this Agreement.

## 6. CONVERSION FEE FOR PERMANENT EMPLOYMENT OF CONTRACT PROFESSIONALS.

6.1. If Client wishes to hire any Contract Professional either during an assignment or within one (1) year following completion thereof, Client is required to contact HC and pay a conversion fee as set forth in this Section 6. Client agrees not to directly or indirectly hire or use the services of any Contract Professional assigned to the Client by HC without paying the conversion fee.

6.2. The conversion fee shall be based upon (i) a stated percentage of Contract Professional's initial salary to be paid by Client and (ii) the total number of hours, if any, such Contract Professional provided Services to Client through HC, as set forth below:

| Hours of Temporary Employment | Placement Fee |
|---|---|
| 0 - 500 | 25% |
| 501 - 1000 | 22% |
| 1001 - 1500 | 18% |
| 1501 - 2000 | 15% |
| Over 2000 | 10% |

6.3. The conversion fee shall be due and payable within thirty (30) days of the first day of the Contract Professional's permanent employment.

6.4. In the event Client or any of its affiliates either (i) employ any Contract Professional on a permanent or temporary basis; (ii) uses any Contract Professional's services in consulting or free lance capacity; or (iii) uses any Contract Professional's services through another temporary service, within one (1) year after the Contract Professional's assignment ends, Client agrees to pay HC a fee based upon the schedule set forth above, applied to the total annualized compensation rate of the Contract Professional in the new capacity.

## 7. REPRESENTATIONS AND WARRANTIES.

7.1. Both parties represent and warrant that they have the full and exclusive right and authority to enter into this Agreement, and that all necessary corporate or other action has been taken to make this a fully binding and enforceable contract between the parties.

7.2. Client represents and warrants that it complies with all occupational and safety and health laws and regulations and provides all work site notifications, orientation and training required by law.

7.3. THE SERVICES ARE PROVIDED ON AN "AS IS" BASIS, AND CLIENT'S USE OF THE SERVICES IS AT ITS OWN RISK. HC DOES NOT MAKE, AND HEREBY DISCLAIMS, ANY AND ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT AND TITLE, AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE.

## 8. WORK ASSIGNMENTS.

8.1. Client recognizes that HC has an employee/employer relationship with Contract Professional(s) and agrees to discuss all matters concerning employment and administration of work assignments with HC directly.

8.2. HC shall not supervise or otherwise influence the work product of any Contract Professional. Accordingly, Client waives any right of recovery against HC for any claims, losses, costs, expenses or damages (including any claims of negligence or malpractice) incurred by Client arising out of Services, work product, or advice provided by Contract Professionals assigned to Client.

## 9. INDEMNIFICATION.

9.1. Client will indemnify, defend, and hold HC harmless from all claims damages, liabilities, judgments, settlements or costs and expenses (including reasonable attorneys' fees) ("Claims") brought by Contract Professional (s) associated with, or resulting from (i) any violation of the Occupational

3



Safety and Health Act (which takes place in premises owned or controlled by Client and to which Contract Professional was assigned to perform Services in); and (ii) any violation of other applicable occupational safety or health laws and regulations (which take place in premises owned or controlled by Client and to which Contract Professional was assigned to perform Services in).

9.2. Client will indemnify, defend and hold HC harmless from all Claims brought by a third party associated with, or resulting from Services provided or work performed by Contract Professionals.

## 10. LIMITATION OF LIABILITY.

10.1. EXCEPT IN CONNECTION WITH THE INDEMNIFICATION OBLIGATIONS SET FORTH IN SECTION 9 ABOVE, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING LOSS OF USE, DATA, BUSINESS OR PROFITS) EVEN IF SUCH PARTY OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS. EXCEPT IN CONNECTION WITH THE INDEMNIFICATION OBLIGATIONS SET FORTH IN SECTION 9 ABOVE, IN NO EVENT WILL EITHER PARTY'S MAXIMUM LIABILITY EXCEED THE FEES PAID OR PAYABLE HEREUNDER. THE FOREGOING PROVISIONS SHALL BE ENFORCEABLE TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

## 11. TERM AND TERMINATION.

11.1. This Agreement shall be effective upon the Effective Date and shall remain in effect thereafter until all Service Orders between the parties have expired or are otherwise terminated as provided herein or therein.

11.2. Either party may terminate this Agreement if the other party materially breaches this Agreement and fails to cure such breach within thirty (30) days (or within a commercially reasonable time period, if it is not commercially reasonable for party to cure the breach within thirty (30) days), after receipt of written notice specifying the nature of such breach.

11.3. In addition, either party may terminate the Agreement upon written notice if the other becomes the subject of any voluntary or involuntary petition in bankruptcy, becomes insolvent, admits in writing its inability to pay its debts as they mature, or is subject to receivership, liquidation, or composition for the benefit of creditors, provided that, with respect to any involuntary filing in bankruptcy, the other party's termination right shall not vest unless such petition or proceeding is not dismissed within sixty (60) days of filing.

## 12. INSURANCE.

12.1. Client acknowledges that HC shall have no responsibility to obtain professional liability insurance in favor of any Contract Professional or Client.

12.2. HC shall not be responsible to Clients or others for claims made under its fidelity bond, unless such claims are reported to HC in writing by Client within fifteen (15) days of occurrence of the event leading to such claim.

12.3. Under no circumstances will HC be responsible for claims arising from work performed by HC's assigned Contract Professional(s) unless such claims are reported in writing to HC by the Client within thirty (30) days after the last date of the Contract Professional(s)' assignment to the Client.

## 13. GENERAL.

13.1. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument.

13.2. Any waiver, modification or amendment of any provision of the Agreement shall be effective only if in writing and signed by duly authorized representatives of the parties.

13.3. This Agreement may not be assigned by Client without the written consent of the other party, except that either party shall have the right to assign this Agreement in whole or in part to any entity acquiring all or substantially all of such party's business relating to this Agreement. All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the parties hereto

4



and their respective heirs, successors and permitted assigns.

13.4. This Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its choice of law provisions. Each party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in the state and federal courts of the State of New York in the County of New York. All parties consent to personal jurisdiction in the State of New York, and agree to accept service of process outside of the State of New York as if service had been made in that state.

13.5. Neither party shall be responsible for any failure or delay in its performance under the Agreement (except payment obligations) due to causes beyond its reasonable control that makes performance commercially impractical ("Force Majeure Event").

13.6. The parties to the Agreement are independent contractors and the Agreement shall not establish any relationship of partnership, joint venture, employment, franchise, or agency between the parties. Neither party shall have the power to bind the other or incur obligations on the other's behalf without the other's prior written consent.

13.7. All notices, requests, and other communications to either party hereunder shall be in writing and shall be delivered to the other party at their respective addresses listed above, or at such other addresses as the parties may notify each other, from time to time, in writing.

13.8. The captions herein are included solely for convenient reference, and shall not be used to aid in the construction or interpretation of this Agreement or any part hereof.

13.9. The waiver by either party of any breach of any provision contained herein shall not operate or be constructed as a waiver of any subsequent breach of the same or any other provision hereof, except that the parties may agree to effectuate valid waivers provided that the same are in writing and signed by both parties.

13.10. All provisions that must survive termination of this Agreement shall survive such termination, including, without limitation, all provisions relating to confidentiality, limitation of liability, indemnification, payment of amounts due hereunder, conversion fees and governing law.

13.11. Any remedy provided in this Agreement shall be cumulative only, and shall not affect the rights of the parties to exercise or avail themselves of any other remedy which they may have in law or in equity.

WHEREFORE, the parties intending to be legally bound do hereby affirm and execute this Agreement.

HC2, Inc.

By: _____
Signature

Print Name

Title: _C.O.O._

Date: _10-17-11_

Adli Law Group P.C.

By _____
Signature

Nicolette Hachem-Sawaya
Print Name

Title: CEO/CFO/Director of Operations

Date: October 14, 2011

5