Victor L. George, State Bar No. 110504
Wayne C. Smith, State Bar No. 112535
LAW OFFICES OF VICTOR L. GEORGE
20355 Hawthorne Blvd., First Floor
Torrance, CA 90503
Tel: (310) 698-0990
Fax: (310) 698-0995
E-mail: vgeorge@vgeorgelaw.com
wsmith@vgeorgelaw.com

William F. Sondericker, Esq.
Carter Ledyard & Milburn, LLP
2 Wall Street
New York, NY 10005-2072
Tel: (212) 732-3200
Fax: (212) 732-3232
E-mail: sondericker@clm.com

Attorneys for Defendants
KANEKA CORPORATION and
KANEKA NORTH AMERICA LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADLI LAW GROUP, a California Corporation,<br><br>Plaintiff,<br>v.<br><br>KANEKA CORPORATION, a Japanese Corporation; and KANEKA NORTH AMERICA LLC, a Texas Limited Liability Company,<br><br>Defendants.<br>―――――――――――――――<br>KANEKA CORPORATION, a Japanese Corporation,<br><br>Counter-Claimant,<br>v.<br><br>ADLI LAW GROUP, a California Corporation; DARIUSH G. ADLI, an individual; NICOLETTE HACHEM-SAWAYA, an individual,<br><br>Counter-Defendants. | CASE NO. CV12-07377 GW (RZx)<br><br>[Assigned to Hon. George H. Wu, Courtroom 10]<br><br>**DEFENDANTS KANEKA CORPORATION AND KANEKA NORTH AMERICA LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND IMPROPER VENUE [F.R.C.P. 12(b)(3) and 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with: Request for Judicial Notice]<br><br>Date: May 2, 2013<br>Time: 8:30 a.m.<br>Crtrm: 10<br><br>Complaint Filed: August 28, 2012<br>Counter-Claim Filed: November 2, 2012<br>Trial Date: None Set |

DEFENDANTS KANEKA CORPORATION AND KANEKA NORTH AMERICA LLC'S MOTION TO DISMISS

| | |
|---|---|
| 1 | HC2, INC., a Washington, DC Corporation, |
| 2 | |
| 3 | Plaintiff-Intervenor, |
| 4 | v. |
| 5 | ADLI LAW GROUP, a California Corporation, KANEKA |
| 6 | CORPORATION, a Japanese Corporation and KANEKA |
| 7 | NORTH AMERICA, LLC, a Texas Limited Liability Company, |
| 8 | Defendants-Intervenor. |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 2, 2013, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 10 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Kaneka Corporation and Kaneka North America LLC will and hereby move this Court to dismiss HC2's Second and Third Claims for Relief against them pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and 12(b)(3), on the grounds that HC2 has failed to state a claim upon which relief can be granted and improper venue.

This Motion is made following the conference of counsel for HC2 pursuant to Local Rule 7-3 which took place on March 28, 2013.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, Request for Judicial Notice, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or

considered by the Court prior to its ruling.

Dated: April 2, 2013         LAW OFFICES OF VICTOR L. GEORGE

                             By: /s/ Wayne C. Smith
                             _____
                             VICTOR L. GEORGE
                             WAYNE C. SMITH
                             Attorneys for Defendants
                             KANEKA CORPORATION and
                             KANEKA NORTH AMERICA LLC
                             and Counter-Claimant
                             KANEKA CORPORATION

# TABLE OF CONTENTS

I. **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. **RULE 12(B)(6) LEGAL STANDARD**. . . . . . . . . . . . . . . . . . . . . . . 2

III. **HC2'S SECOND AND THIRD CLAIMS OF RELIEF AGAINST KANEKA CORPORATION AND KANEKA NORTH AMERICA SHOULD BE DISMISSED BECAUSE THEY ARE NONSIGNATORIES TO THE MASTER SERVICES AGREEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. **HC2'S SECOND AND THIRD CLAIMS OF RELIEF AGAINST KANEKA NORTH AMERICA SHOULD BE DISMISSED BECAUSE KANEKA NORTH AMERICA DID NOT EXIST DURING THE TIME ALG CONTRACTED WITH HC2**. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. **HC2'S THIRD CLAIM OF RELIEF AGAINST KANEKA CORPORATION AND KANEKA NORTH AMERICA FOR QUANTUM MERUIT SHOULD BE DISMISSED BECAUSE HC2 PLEADS IDENTICAL ALLEGATIONS UNDER BREACH OF WRITTEN CONTRACT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI. **HC2'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(3) FOR IMPROPER VENUE**. . . . . . . . . . . . 10

VII. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). . . . . . . . . 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) . . . . . . . . . . 2

*Britton v. Co-op Banking Group*,
    4 F.3d 742 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*,
    94 Cal.App. 4th 151 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). . . . . . . . 10

*Continental Casualty Co. v. American National Insurance Co.*,
    417 F.3d 727 (7th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Corporate Nat. Realty, Inc. v. Laboratory Corp. of America*,
    2008 WL 2597970. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Docksider, Ltd. v. Sea Technology, Ltd.*,
    875 F2d 762 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Georgia Malone & Co., Inc. v. Rieder*,
    19 N.Y.3d 511 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Grant v. Aurora Loan Services, Inc.*,
    736 F. Supp. 2d 1257 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . 6

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
    41 Cal. App. 4th 1410 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heller v. Kurz*,
    228 A.D.2d 263, 643 N.Y.S.2d 580 (1996) . . . . . . . . . . . . . . . . . . 8

| **Cases** | **Page(s)** |
|---|---|
| *Henry v. Associated Indem. Corp.*, | |
| 217 Cal. App. 3d 1405 (1990) | 4 |
| *Klein v. Chevron U.S.A., Inc.*, | |
| 202 Cal. App. 4th 1342 (2012) | 7 |
| *Knappenberger v. City of Phoenix*, | |
| 566 F.3d 936 (9th Cir. 2009) | 3 |
| *Levi v. Power Conversion, Inc.*, | |
| 47 A.D.2d 543 (1975) | 8 |
| *Lopez v. Smith*, | |
| 203 F.3d 1122 (9th Cir. 2000) | 3 |
| *M/S Bremen v. Zapata Off-Shore Co.*, | |
| 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) | 11 |
| *McMichael v. U.S. Filter Corp.*, | |
| EDCV 99-182VAP(MCX), 2001 WL 418981 (C.D. Cal. Feb. 23, 2001) | 6 |
| *Mendiondo v. Centinela Hosp. Med. Ctr.*, | |
| 521 F.3d 1097 (9th Cir. 2008) | 3 |
| *Moss v. U.S. Secret Serv.*, | |
| 572 F.3d 962 (9th Cir. 2009) | 3 |
| *Murphy v. Schneider Nat'l, Inc.*, | |
| 362 F.3d 1133 (9th Cir. 2004) | 11 |
| *Owens v. Kaiser Found. Health Plan, Inc.*, | |
| 244 F.3d 708 (9th Cir. 2001) | 3 |
| *Parker Realty Group, Inc. v. Petigny*, | |
| 14 N.Y.3d 864 (2010) | 8 |
| *Reilly v. Natwest Markets Group Inc.*, | |
| 181 F.3d 253 (2d Cir. 1999) | 8 |

| | |
|---|---|
| ***Cases*** | ***Page(s)*** |
| *Schutty v. Speiser Krause P.C.,* | |
|     86 A.D.3d 484 (2011)................................ | 8 |
| *Shearson/American Express, Inc. v. McMahon,* | |
|     482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185(1987). ......... | 12 |
| *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,* | |
|     915 F.2d 1351 (9th Cir. 1990)............................ | 10 |
| *Turner v. Thorworks Indus., Inc.,* | |
|     WL 829142 (E.D. Cal. 2006). ........................... | 4 |

| **Codes, Statutes, Misc.** | **Page(s)** |
|---|---|
| 9 U.S.C. § 2. ............................................. | 12 |
| Fed. R. Civ. P., Rule 8(a). ................................. | 2 |
| Fed. R. Civ. P., Rule 12(b). ....................... | 2, 3, 10, 12, 13 |
| Fed. R. Civ. P., Rule 15(a). ............................... | 3 |
| Fed. R. Civ. P., Rule 201.. ............................. | 5, 6 |

DEFENDANTS KANEKA CORPORATION AND KANEKA NORTH AMERICA LLC'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In or about April 2010, Defendant Adli Law Group, a California Corporation ("ALG") commenced representation of Kaneka Corporation, to represent Kaneka Corporation's interest in numerous patent litigation cases before the International Trade Commission ("ITC"), the United States District Court for the Central District of California, Southern District Court of Texas, and Norther District of Texas. However, at no point did ALG have an executed retainer agreement with Kaneka Corporation.

In February 2012, Kaneka Corporation started to suspect the correctness of the mounting bills submitted by ALG. ALG's billing had been drastically increasing since September 2011, which went from hundreds of thousands of dollars every month to millions of dollars every month, without any remarkable reasonable known to Kaneka Corporation. Kaneka Corporation had continued payment until March 23 in good faith, by when Kaneka Corporation had paid approximately $20 million. This billing amount, however, by ALG was keeping seven digits every month. The bills included an outstanding, indeed shocking charge in excess of $9.5 million in claimed services from outside vendors.

As a result, Kaneka Corporation terminated ALG's representation to stem the hemorrhaging and retained an outside legal auditing firm in an attempt to determine if such astronomical bills could be legitimate - not surprisingly, they were not. While analyzing bills submitted by ALG, the auditors determined that the bills submitted, *inter alia*, contained block billing, inadequate descriptions of services, description of time keepers, double billing in the form of submission of outside vendor time as both a cost item and billing as if they were ALG employees!

Other irregularities include (the list is too long to recite in full): numerous time entries exceeding 15 hours in a day, including entries for individual

attorneys that range as high as 43 hours in a single 24 hour day, 5000 hours personally billed in a single year by Adli, improper hourly rate increases, concealed charges for overhead, administrative charges, and concealed increases in charges submitted by vendors.

Moreover, ALG's third party vendors, who were retained without Kaneka Corporation's knowledge or consent (and there is no retainer agreement authorizing the retention of these vendors) remain unpaid. One such third party vendor, HC2, Inc. ("HC2"), has been allowed to intervene and filed its complaint against Adli Law Group, Kaneka Corporation, and Kaneka North America.

HC2's complaint pleads its second and third claims of relief for breach of written contract and quantum meruit against Kaneka Corporation and Kaneka North America. HC2's claims for relief must be dismissed for the following reasons: <u>First</u>, HC2's second and third claims of relief against Kaneka Corporation and Kaneka North America should be dismissed because they are nonsignatories to any and all agreements between ALG and HC2; <u>Second</u>, Kaneka North America did not exist during the time period in which ALG contracted with HC2; <u>Third</u>, HC2's third claim of relief against Kaneka Corporation and Kaneka North America for quantum meruit should be dismissed as HC2 expressly pleads nearly identical allegations for a claim for breach of written contract; <u>Fourth</u>, HC2's complaint should be dismissed for improper venue pursuant to rule 12(b)(3).

## II. <u>RULE 12(B)(6) LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A court may grant such a dismissal

only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In conducting the above analysis, a court must accept all factual allegations as true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Should a court dismiss certain claims in the complaint, it must also decide whether to grant leave to amend. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P. 15(a)(2); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). A court should not deny leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal quotation marks omitted; quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

### III. HC2'S SECOND AND THIRD CLAIMS OF RELIEF AGAINST KANEKA CORPORATION AND KANEKA NORTH AMERICA SHOULD BE DISMISSED BECAUSE THEY ARE NONSIGNATORIES TO THE MASTER SERVICES AGREEMENT

As a general rule, a non-party to a contract is not liable for breach of that contract to which it did not enter. *Britton v. Co-op Banking Group*, 4 F.3d 742,

744 (9th Cir. 1993) ("[C]ontractual right [such as breach of contract] may not be invoked by one who is not a party to the agreement"); *Turner v. Thorworks Indus., Inc.*, WL 829142 (E.D. Cal. 2006) ("As a general matter, a non-party, or nonsignatory, to a contract is not liable for a breach of that contract"); *Henry v. Associated Indem. Corp.*, 217 Cal. App. 3d 1405, 1416-17 (1990) ("There was no direct contractual relationship between [the parties in which] a breach of contract action could properly spring.")

Here, it is clear that Kaneka Corporation and Kaneka North America are both nonsignatories to the Master Services Agreement entered into on October 17, 2011, which is attached as Exhibit 1 to HC2's complaint. Rather, the Master Services Agreement is signed by ALG's CEO/CFO/Director of Operations Nicolette Hachem-Sawaya. Moreover, HC2's Service Orders entered into on October 31, 2011 and February 24, 2012 also only include Ms. Sawaya's signature on behalf of ALG. Most significantly, during this time period Kaneka North America was not even in existence and did not become incorporated until February, 2012. As discussed further below, Kaneka North America did not exist on October 17, 2011, the date the Master Services Agreement was entered into.

Kaneka Corporation and Kaneka North America did not sign or join the Master Services Agreement as a party. The terms of the Master Services Agreement look only to one obligor to pay for Hire Counsel's services: 1) In its heading that "ADLI LAW GROUP P.C. . . . ("Client")"; 2) Section 1.2 excludes any other alleged agreements stating "This Agreement . . . . represent the entire understanding and agreement between the parties"; 3) Section 2.1 states how invoices are to be rendered and paid by ALG; 4) Section 4 indicates that the client alone, ALG, will verify services; 5) Sections 9.1 and 9.2 indicate that only Client is bound to indemnify; and 6) Only HC2 and ALG are parties and signatories to the contract. Under New York law, HC2 would not be entitled to

payment "because the matter is controlled" by the Master Services Agreement that HC2 and ALG signed and alone entered. *Corporate Nat. Realty, Inc. v. Laboratory Corp. of America*, 2008 WL 2597970. In addition, Kaneka North America did not own any patents. Hire Counsel did not provide any services for Kaneka North America. As a result, Kaneka Corporation and Kaneka North America are not subject to HC2's second claim for breach of written contract and should be dismissed.

## IV. HC2'S SECOND AND THIRD CLAIMS OF RELIEF AGAINST KANEKA NORTH AMERICA SHOULD BE DISMISSED BECAUSE KANEKA NORTH AMERICA DID NOT EXIST DURING THE TIME ALG CONTRACTED WITH HC2

HC2 asserts its second and third claims of relief against Kaneka North America for: 1) Breach of Written Contract and 2) Quantum Meruit. According to HC2's complaint, both of these claims arise from a Master Services Agreement entered between ALG and HC2 on October 14, 2011. Moreover, these claims also arise from Service Orders entered between ALG and HC2 that stem from the Master Services Agreement. Based on HC2's complaint, HC2's claims of relief against Kaneka North America should be dismissed from this action without leave to amend because Kaneka North America did not exist when ALG and HC2 entered into the Master Services Agreement.

Kaneka North America respectfully requests the Court take judicial notice of the Certificate of Incorporation from the Secretary of State of Texas, which states that Kaneka North America was not formed until February, 2012. Federal Rules of Evidence, Rule 201 provides that a court can take judicial notice of facts which are not subject to reasonable dispute and are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Judicial notice of a state's certificate of incorporation

is permissible under Federal Rules of Evidence Rule 201. *See Grant v. Aurora Loan Services, Inc.*, 736 F. Supp. 2d 1257, 1265 (C.D. Cal. 2010) (Court would take judicial notice of state filing regarding bank's incorporation); *McMichael v. U.S. Filter Corp.*, EDCV 99-182VAP(MCX), 2001 WL 418981 (C.D. Cal. Feb. 23, 2001) ("The certificate of incorporation of a Delaware corporation is a publicly filed document, and as such, can be judicially noticed.")

HC2 attached as Exhibit 1 its Master Services Agreement entered between HC2 and ALG. The Master Services Agreement provides:

> 1.1. Subject to the terms and conditions of this Agreement, during the term of this Agreement, HC shall provide to Client the Services as specifically described in the Service Order. <u>From time to time, the parties may add new Service Orders, which, upon execution by both parties, will be subject to the terms and conditions of this Agreement</u>.

In HC2's Complaint, it alleges that:

> 14. Between October 17, 2011 and May 14, 2012, Hire Counsel provided over 50 temporary attorneys, paralegals and other legal professionals and computer equipment required to review, manage and analyze documents in Los Angeles for the Kaneka patent litigation <u>pursuant to the terms of the Master Services Agreement and Service Orders</u>.
>
> * * * *
>
> 29. From October 2011 to May 2012, Adli Law, acting as agent for Kaneka and Kaneka America, <u>submitted Service Orders</u> requesting Hire Counsel provide professionals with a variety of specific qualifications to assist with Adli Law's representation of Kaneka and Kaneka America.

(emphasis added.)

On October 14, 2011, when ALG and HC2 entered into the Master Services Agreement, Kaneka North America was a corporation not yet formed

and did not exist on October 17, 2011. Rather, Kaneka North America was not formed as a corporation until February, 2012. HC2's allegations that it provided services between "October 17, 2011 and May 14, 2012 . . . . pursuant to the terms of the Master Services Agreement and Service Orders" is also insufficient. The Master Services Agreement states: "Service Orders . . . . will be subject to the terms and conditions of this Agreement." Kaneka North America did not come into existence until February, 2012. Obviously, Kaneka North America cannot be accountable for Service Orders which stem from the Master Services Agreement entered into on October 14, 2011, four months before its existence. As a result, Kaneka North America should be dismissed from HC2's complaint without leave to amend.

## V. HC2'S THIRD CLAIM OF RELIEF AGAINST KANEKA CORPORATION AND KANEKA NORTH AMERICA FOR QUANTUM MERUIT SHOULD BE DISMISSED BECAUSE HC2 PLEADS IDENTICAL ALLEGATIONS UNDER BREACH OF WRITTEN CONTRACT

Under California law, a quantum meruit claim is legally insufficient when based on an express written contract. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) (a plaintiff may not "pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter"); *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights"); *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996) ("[I]t is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation . . . . Quantum meruit is an equitable theory which supplies, by

implication and in furtherance of equity, implicitly missing contractual terms. Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject.")

New York law is consistent with California law holding that a quantum meruit claim is legally insufficient when based on an express written contract.[1] *See Parker Realty Group, Inc. v. Petigny*, 14 N.Y.3d 864, 865-66 (2010) ("Recovery under the theory of quantum meruit is not appropriate where, as here, an express contract governed the subject matter involved"); *Schutty v. Speiser Krause P.C.*, 86 A.D.3d 484, 485-86 (2011) ("The fifth cause of action, for quantum meruit, was correctly dismissed because, in the absence of an agreement on new terms, plaintiff's employment continued to be governed by the 2003 agreement, and recovery under the theory of quantum meruit is unavailable where an express contract covers the same subject matter"); *Levi v. Power Conversion, Inc.*, 47 A.D.2d 543 (1975) ("The existence of an express contract in this case, as indicated by the record, negates the possibility of a recovery by plaintiff under a Quantum meruit theory.") Moreover, it is not enough that HC2 pleads that Kaneka Corporation and Kaneka North America received a benefit from the activities of Hire Counsel. *Heller v. Kurz*, 228 A.D.2d 263, 264, 643 N.Y.S.2d 580, 582 (1996) ("It is not enough that the defendant received a benefit from the activities of the plaintiff"); *See also Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 262-63 (2d Cir. 1999) ("Under New York law, the existence of an express contract governing a particular subject matter ordinarily precludes recovery in *quantum meruit* for events arising out of the same subject

---

[1] Defendant recognizes that the Master Services Agreement section 13.4 states: "This Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its choice of law provisions." However, due to the consistent approach taken by California courts and New York courts, a choice of law analysis is unnecessary at this stage.

8

matter"); *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511 (2012) (same).

Here, HC2 asserts in its complaint a second claim against Kaneka Corporation and Kaneka North America for breach of written contract. HC2 alleges:

> 28. In the alternative, based on such contention, Hire Counsel alleges on such information and belief, that on or about October 14, 2011, <u>Kaneka and Kaneka America acting through their authorized agent, Adli Law, entered into the Master Services Agreement</u> under which Hire Counsel agreed to provide temporary lawyers and other professionals for which Kaneka and Kaneka America agreed to pay Hire Counsel's invoiced fees in connection with the Kaneka patent litigation.
> 
> 29. <u>From October 2011 to May 2012, Adli Law, acting as agent for Kaneka and Kaneka America, submitted Service Orders</u> requesting Hire Counsel provide professionals with a variety of specific qualifications to assist with Adli Law's representation of Kaneka and Kaneka America.

(emphasis added.) In HC2's third claim for Quantum Meruit, it pleads nearly identical facts to those pled in its second claim for breach of written contract:

> 34. Hire Counsel provided legal support services, including more than 50 lawyers, paralegals and other legal professionals and related equipment <u>under the written Master Services Agreement dated October 14, 2011</u> at the request of Adli Law, Kaneka, and Kaneka America.
> 
> 35. Adli Law, Kaneka and Kaneka America knew that these services were being provided by Hire Counsel, and Adli Law, Kaneka and Kaneka America used, enjoyed and accepted the benefit of such services in order to satisfy their legal obligations in the pending Kaneka patent litigation.

(emphasis added.)

Here, HC2's third claim of relief for quantum meruit seeks recovery for the "fair value for such services" which were provided "under the written Master

Services Agreement dated October 14, 2011." (HC2's Compl. ¶¶34-37.) However, HC2 admits and pleads in paragraph 34 itself, in addition to paragraphs 12-14 and 27-29, that the services it provided were pursuant to the Master Service Agreement and Service Orders. (HC2's Comp. ¶¶12-14, 27-29, 34) ("Between October 17, 2011 and May 14, 2012, Hire Counsel provided . . . . [P]ursuant to the terms of the Master Services Agreement and Services Orders.") (emphasis added.) Under the precedent and authorities cited herein, HC2's quantum meruit claim fails as a matter of law because the parties have an express contract governing the provision of any services allegedly performed by HC2. As a result, HC2's third claim for quantum meruit should be dismissed without leave to amend. At a minimum, Kaneka North America must be dismissed with prejudice.

## VI. HC2'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(3) FOR IMPROPER VENUE

HC2 attaches as Exhibit 1 the Master Services Agreement. This Master Services Agreement specifies "any legal action . . . . must be brought solely and exclusively in the state and federal courts of the State of New York in the County of New York." HC2's complaint should be dismissed as it is currently in an improper venue.

It is without question that parties may contract to designate a forum and venue in which to resolve any disputes between themselves. Litigation commenced elsewhere is subject to dismissal for improper venue. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S. Ct. 1522, 1525, 113 L. Ed. 2d 622 (1991); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,* 915 F.2d 1351, 1353 (9th Cir. 1990); *Continental Casualty Co. v. American National Insurance Co.*, 417 F.3d 727, 730, 733 (7th Cir. 2005) (Dismissal proper where designated forum was not within the Northern District of Illinois).

"[Forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972). The party challenging the [forum selection] clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). Unless HC2 can present evidence that meets this heavy burden, the district court should deny HC2's complaint.

Despite this strong presumption, the Court in *Bremen* recognized exceptions "that would make enforcement of a forum selection clause unreasonable: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; and (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Murphy*, 362 F.3d at 1140.

With these few exceptions in mind, it is apparent that none exist here. HC2 does not present any evidence or argument in support of the first or third exception to the rule set fourth in *Bremen*. Other than the expense of additional litigation and the possibility of not being able to collect an unestablished debt, HC2 has no hurdles in pursuing an independent action for its alleged debt owed by ALG. Because HC2 will have to incur additional litigation expenses to file suit against ALG in New York, this does not nearly meet the second exception to the *Bremen* rule. *See Bremen*, 407 U.S. at 19 (upholding forum-selection clause which required litigation to take place in London); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 327 (9th Cir. 1996) (upholding forum-selection clause which required litigation to take place in Mexico).

///

A forum selection clause in a written contract affecting commerce are "valid, irrevocable and enforceable." 9 U.S.C. § 2. This is true even when statutory claims are asserted. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185(1987). Moreover, the Ninth Circuit has consistently held that forum and venue clauses which are specifically designated in a state or district, as here the State of New York and County of New York, to be the exclusive forum. *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F2d 762, 764 (9th Cir. 1989).

Here, HC2 entered into the Master Services Agreement which provides:

> 13.4. This Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its choice of law provisions. **Each party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this agreement must be brought solely and exclusively in the state and federal courts of the State of New York in the County of New York**. All parties consent to personal jurisdiction in the State of New York, and agree to accept service of process outside of the State of New York as if service had been made in that state.

It is clear that this provision exclusively provides for the resolution of disputes to be "brought solely and exclusively in the state and federal courts of the State of New York in the County of New York." Nevertheless, HC2 seeks to improperly complain in this Court, placing it in an improper venue.

Accordingly, this Court should dismiss HC2's complaint because it is placed in an improper venue pursuant to Federal Rules of Civil Procedure, Rule 12(b)(3).

///

///

## VII. CONCLUSION

In sum, HC2's second and third claims of relief against Kaneka Corporation and Kaneka North America should be dismissed because they are nonsignatories to the Master Services Agreement. In addition, HC2's second and third claims or relief against Kaneka North America should be dismissed as a matter of law as Kaneka North America did not even exist when ALG and HC2 entered into their contract. HC2's third claim of relief against Kaneka Corporation and Kaneka North America for quantum meruit should be dismissed as HC2 expressly pleads in nearly identical allegations a claim for breach of written contract in its second claim of relief. Finally, HC2's complaint should be dismissed for improper venue pursuant to rule 12(b)(3).

Dated: April 2, 2013      LAW OFFICES OF VICTOR L. GEORGE

/s/ Wayne C. Smith
By:_____
VICTOR L. GEORGE
WAYNE C. SMITH
Attorneys for Defendants
KANEKA CORPORATION and
KANEKA NORTH AMERICA LLC
and Counter-Claimant
KANEKA CORPORATION