Victor L. George, State Bar No. 110504
Wayne C. Smith, State Bar No. 122535
LAW OFFICES OF VICTOR L. GEORGE
20355 Hawthorne Blvd., First Floor
Torrance, CA 90503
Tel: (310) 698-0990
Fax: (310) 698-0995
E-mail: vgeorge@vgeorgelaw.com
         wsmith@vgeorgelaw.com

William F. Sondericker, Esq.
Carter Ledyard & Milburn, LLP
2 Wall Street
New York, NY 10005-2072
Tel: (212) 732-3200
Fax: (212) 732-3232
E-mail: sondericker@clm.com

Attorneys for Defendants
KANEKA CORPORATION and
KANEKA NORTH AMERICA LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADLI LAW GROUP, a California Corporation,<br><br>         Plaintiff,<br>     v.<br><br>KANEKA CORPORATION, a Japanese Corporation; and KANEKA NORTH AMERICA LLC, a Texas Limited Liability Company,<br><br>         Defendants.<br>_____<br>KANEKA CORPORATION, a Japanese Corporation,<br><br>         Counter-Claimant,<br>     v.<br><br>ADLI LAW GROUP, a California Corporation; DARIUSH G. ADLI, an individual; NICOLETTE HACHEM-SAWAYA, an individual,<br><br>         Counter-Defendants. | CASE NO. CV12-07377 GW (RZx)<br><br>[Assigned to Hon. George H. Wu, Courtroom 10]<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN INTERVENTION OF HC2; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 2, 2012<br>Time: 8:30 a.m.<br>Crtrm: 10<br><br><br><br><br>Complaint Filed: August 28, 2012<br>Counter-Claim Filed: November 2, 2012<br>Trial Date: December 10, 2013 |

1
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN INTERVENTION OF HC2

| | |
|---|---|
| 1 | HC2, INC., a Washington, DC Corporation, |
| 2 | |
| 3 | Plaintiff-Intervenor, |
| 4 | v. |
| 5 | ADLI LAW GROUP, a California Corporation, KANEKA CORPORATION, a Japanese Corporation and KANEKA NORTH AMERICA, LLC, a Texas Limited Liability Company, |
| 6 | |
| 7 | |
| 8 | Defendants-Intervenor. |

///

///

///

///

///

///

///

///

2
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN INTERVENTION OF HC2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The opposition filed by HC2, while long on argument, is utterly bereft of any authorities that would allow it to escape from the contractual language it drafted when it was retained by Adli Law Group ("ALG"), the "Client". Curiously, in order to attempt to bring Kaneka Corporation ("Kaneka") and Kaneka North America ("KNA") in as "disclosed" principals, it relies on "Adli's sworn statement that he acted as their disclosed agent" (Opposition, pg. 3:26-27).  However, there are no allegations that HC2 knew, at the time it entered the Master Services Agreement ("MSA") with ALG, that ALG was the agent of either or both Kaneka or KNA?  The answer is there are none and for good reasons:

1. The MSA is expressly between HC2 and ALG, the "Client", alone;
2. The MSA states that "Client desires to engage HC to provide Services";
3. The MSA is signed by ALG by Nicolette Hachem-Sawaya, the CEO/CFO/Director of Operations;
4. Paragraph 13.2 provides:
   "Any waiver, modification or amendment of any provision of the Agreement shall be signed by duly authorized representatives of the parties."
5. Paragraph 13.3 provides:
   "This Agreement may not be assigned by the Client without the written consent of the other party, except that either party shall have the right to assign this Agreement in whole or in part to any entity acquiring all or substantially all of the party's business relating to this Agreement . . ."

6.   Paragraph 1.2 is an integration clause and provides:

"This Agreement and each Service Order executed in connection with this Agreement, and any schedules or other documents expressly incorporated herein or therein, represent the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between the parties. In the event of any conflict between the terms and conditions of this Agreement and any Service Order, the terms of the Service Order shall prevail."

Here, ALG and HC2 agreed that ALG was the "client", the MSA was a fully integrated agreement that superseded any other agreements and that the MSA could not be modified or transferred without consent. HC2's own documentation is devoid of any reference to any "principal" of the "client" ALG or of any provision that a principal such as Kaneka will be obligated to pay HC2 or guarantee any payment to HC2.  Of course, under the Statute of Frauds, the party to be charged must sign and neither Kaneka nor KNA was presented with or signed any document of HC2.  Thus, there is no basis for a breach of contract claim.

Second, the claims against KNA are fatally defective.  HC2 has alleged that the MSA was executed in October 2011 with the knowledge and consent of KNA - a factually impossible proposition since KNA did not exist until five (5) months later.

Third, in light of the existence of a contract, the claims for quantum meruit are barred.

///

## II. THE MOTION TO DISMISS SHOULD BE GRANTED

### A. HC2'S Second and Third Claims of Relief Against Kaneka Corporation and Kaneka North America Should Be Dismissed Because They Are Nonsignatories to the Master Services Agreement

As set forth above, the sole and exclusive contract claims based on the MSA are against ALG, not Kaneka or KNA because a non-party to a contract is not liable for breach of that contract to which it did not enter. *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993) ("[C]ontractual right [such as breach of contract] may not be invoked by one who is not a party to the agreement"); *Turner v. Thorworks Indus., Inc.*, WL 829142 (E.D. Cal. 2006) ("As a general matter, a non-party, or nonsignatory, to a contract is not liable for a breach of that contract"); *Henry v. Associated Indem. Corp.*, 217 Cal. App. 3d 1405, 1416-17 (1990) ("There was no direct contractual relationship between [the parties in which] a breach of contract action could properly spring.")

Since the MSA precludes any contractual liability, the cause of action for breach of contract should be dismissed.

### B. The Complaint Should be Dismissed as to KNA

HC2's complaint in intervention alleges that in October 2011, it was retained by ALG to assist in document reviews for Kaneka and KNA at that at all times, ALG was acting with the knowledge and consent of Kaneka and KNA (Complaint ¶¶12, 28). However, KNA did not exist until February 15, 2012. Thus, the complaint is fatally defective.

Faced with the fact that KNA did not exist before February 15, 2012 (5 months after the MSA was signed), HC2 "alleges" for the first time in its opposition that KNA is the successor to Kaneka Texas Corporation ("KTC"). While HC2 claims on one hand that KNA is the successor to KTC, on the other hand, it alleges that KTC merged not with KNA, but with another company,

Kaneka New York Holding, Inc.  Beyond that, HC2 fails to allege that it had any dealings with KTC and in fact, it did not.  The utter lack of any allegations is not surprising because the complaint filed by ALG precludes this assertion.  Paragraph 14 of ALG's Complaint alleges:

> "Beginning on or about February, 2012, Kaneka Corporation directed and used its subsidiary, Kaneka North America LLC, as it agent and representative to speak and act on its behalf with regard to monies owed to Adli Law.  Kankeka Corporation for itself and Kaneka North America LLC for itself and as agent and representative for Kaneka Corporation, each affirmatively misled Adli to believe that Kaneka would pay outstanding bills for legal services and costs.  However, Kaneka refused to honor it's [sic] agreed upon payment plan."

Thus, what HC2 has done is to merely attempt to tag along on the claims made by ALG, but misunderstands the theory of liability.  ALG apparently concedes KNA is not liable on the MSA and that any claimed liability is post-MSA based on "representations" about payment plans for overdue bills made apparently in the April 2012 time frame.   Accordingly, the motion should be granted.

### C. The Claim for Qauntum Meruit Should be Dismissed

HC2 does not provide any authority to dispute or distinguish the authorities cited in Defendants' opposition to the effect that a claim for quatum meriut is legally insufficient when based on an express written contract.  *See Parker Realty Group, Inc. v. Petigny*, 14 N.Y.3d 864, 865-66 (2010) ("Recovery under the theory of quantum meruit is not appropriate where, as here, an express contract governed the subject matter involved"); *Schutty v. Speiser Krause P.C.*, 86 A.D.3d 484, 485-86 (2011) ("The fifth cause of action, for quantum meruit, was correctly dismissed because, in the absence of an

agreement on new terms, plaintiff's employment continued to be governed by the 2003 agreement, and recovery under the theory of quantum meruit is unavailable where an express contract covers the same subject matter"); *Levi v. Power Conversion, Inc.*, 47 A.D.2d 543 (1975) ("The existence of an express contract in this case, as indicated by the record, negates the possibility of a recovery by plaintiff under a Quantum Meruit theory.").

Accordingly, the motion should be granted.

## III. CONCLUSION

For all the foregoing reasons, the motion to dismiss should be granted.

Dated: April 17, 2013         LAW OFFICES OF VICTOR L. GEORGE

                              By: ___/s/_____
                                  VICTOR L. GEORGE
                                  WAYNE C. SMITH
                                  Attorneys for Defendants
                                  KANEKA CORPORATION and
                                  KANEKA NORTH AMERICA LLC
                                  and Counter-Claimant
                                  KANEKA CORPORATION